UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITE HERE, LOCAL 737, AFL-CIO,

       Plaintiff,

v.                                    CASE NO. 6:18-cv-000833

WALT DISNEY PARKS AND RESORTS,

                                        **DISPOSITIVE MOTION**

       Defendant.

_____/

**DEFENDANT WALT DISNEY PARKS AND RESORTS U.S., INC.'S[1]
MOTION FOR SUMMARY JUDGMENT
AND SUPPORTING MEMORANDUM OF LAW**

       Defendant, Walt Disney Parks and Resorts U.S., Inc. ("WDPR" or "the Company"),

pursuant to Federal Rule of Civil Procedure 56, files its Motion for Summary Judgment against

Plaintiff UNITE HERE, Local 737, AFL-CIO ("Local 737" or "the Union") and states:

## I.    <u>INTRODUCTION</u>

       Local 737 is unhappy with the outcome of an arbitration.  A mutually agreed-upon

arbitrator denied a grievance brought by Local 737 and provided the basis for her ruling;

however, the arbitrator did not incorporate that ruling into a later "formal" decision as she

indicated she would.  Tellingly, Local 737 does not seek that "formal" decision; rather, it asks

the Court to vacate the unfavorable ruling altogether and give it a second bite at the apple with

a different arbitrator.  Judgment should be entered for WDPR because Local 737 cannot meet

its statutory burden for vacatur and no subsequent formal decision was necessary.  Further,

_____

[1] Defendant's legal name is "Walt Disney Parks and Resorts U.S., Inc."

judgment is warranted because the Complaint is untimely as served more than three months after the arbitrator's delivery of the ruling.

## II.    MOTION

1.      Local 737 is a voluntary, unincorporated association and is a labor organization as defined in Section 152(5) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 152(5).  (D.E. 1-3 at p. 4, ¶2.)

2.      WDPR is an employer as defined in Section 152(2) of the NLRA, 29 U.S.C. § 152(2).  (*Id.* at p. 4, ¶4.)

3.      Local 737 is an affiliate of a six-member association of unions known as the Service Trade Council Union ("STCU").  (*Id.* at p. 5, ¶7.)  Local 737 and the STCU have been certified under the NLRA as the collective bargaining representative of certain WDPR employees.  (*Id.*)

4.      On March 30, 2014, Local 737 and WDPR executed and placed into effect a collective bargaining agreement covering the period from March 30, 2014 until September 21, 2019 (the "Agreement").  (D.E. 1-3 at p. 5, ¶8; *see id.* at pp. 10-128.)  The Agreement governs wages, hours, and other terms and conditions of employment of the WDPR employees represented by Local 737 and the STCU.  (*Id.* at p. 5, ¶8.)

5.      Article 19 of the Agreement establishes a grievance-arbitration procedure to resolve disputes arising under the Agreement.  (*Id.* at p. 5, ¶9; *see id.* at pp. 44-46.)  Section 3, Step 4 of Article 19 of the Agreement provides in pertinent part: "The Decision of the Arbitrator shall be final and binding on all parties with no further appeal, except for reasons of

setting aside an Arbitrator's Award, as set forth in applicable Federal and Florida Statutes." (*Id.* at p. 46 (Art. 19, § 3 Grievance Procedure, Step 4).)

6.      On January 8, 2018, Local 737 filed a Complaint, in the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida seeking to vacate an arbitration award that had been entered against it and in favor of WDPR on October 9, 2017 ("the State Court Action"). (D.E. 1-3.) The Complaint alleges that vacatur is warranted under 29 U.S.C. § 185 (Count I) and under the Federal Arbitration Act, 9 U.S.C. 10, and the Florida Revised Arbitration Code, Chapter 682, Florida Statutes (Count II), alleging that the Arbitrator's award was "neither contemplated nor authorized by the Agreement" and "did not draw [its] essence from the Agreement." (D.E. 1-3.)

7.      On May 29, 2018, WDPR timely removed the Complaint to this Court. (D.E. 1.)

8.      On June 5, 2018, WDPR timely filed its Answer, Defenses, and Affirmative Defenses. (D.E. 5.)

9.      Defendant is entitled to entry of a summary judgment against Local 737 because the Complaint was untimely served; the undisputed facts establish that the instant arbitration award does not meet any of the extremely limited bases for vacating an arbitration award that arises from a collective bargaining agreement, and because the Florida Revised Arbitration Code does not apply.

WHEREFORE, WDPR prays that summary judgment be entered in its favor, an award of its reasonable attorneys' fees pursuant to this Court's inherent equity power, and such other and further relief as this Court deems just and proper.

### III.   STATEMENT OF UNDISPUTED MATERIAL FACTS

10.    On or about September 1, 2015, the Union submitted a grievance pursuant to the Agreement that challenged WDPR's formula for calculating gratuities for servers at a certain restaurant ("the Grievance"). (*Id.* at p. 5, ¶11.)

11.    The parties mutually selected Ms. Kitty Grubb (the "Arbitrator") to serve as the Arbitrator to resolve the Grievance pursuant to Article 19, Step 4 of the Agreement.  (*Id.* at p. 5, ¶12.)  On or about October 4, 2016, the Arbitrator conducted a hearing regarding the Grievance.  (*Id.*)

12.    On January 20, 2017, Local 737 and WDPR submitted their individual post-arbitration briefs on arguments and issues.  (*Id.* at pp. 132-159, 161-177.)

13.    On October 9, 2017, the Arbitrator sent an email to the parties, referencing delays in services to her County due to Hurricane Irma, and issued her ruling that "the Union did not carry its burden of proof, and thus, the Grievance is denied." (*Id.* at pp. 179-183.)  In addition, the Arbitrator cited Article 5, Section 1 of the parties' Joint Exhibit 1 (the Agreement) and quoted its pertinent language as authority for that ruling.  (*Id.*)  Although the Arbitrator indicated a "formal Decision" would follow, (*id.*), none did.

14.    On May 8, 2018, the Summons and Complaint in the State Court Action were served upon WDPR.  (*See* WDPR's First Set of Interrogatories to Plaintiff and Plaintiff's Response to Defendant First Set of Interrogatories, Exhibits A and B, respectively, attached hereto; D.E. 1.)

## IV.    <u>MEMORANDUM OF LAW</u>

Local 737 asks this Court to vacate an unfavorable arbitrator's ruling on the basis that it allegedly did not draw its essence from the Agreement and was not incorporated into a "formal" decision the Arbitrator indicated she would provide.   However, the law concerning vacating arbitration decisions is well-settled: courts disturb them only reluctantly and under specific circumstances.   To act otherwise is contrary to the purpose of arbitrations.   If Local 737 simply thought more was required from the Arbitrator, it would have asked the Court for such an order.   The remedy Local 737 seeks, however, is to vacate the ruling it lost and remand this case to a different arbitrator, doubtless hoping to obtain a different result with a do-over hearing before someone else.   However, the Arbitrator's ruling should not be vacated because the Complaint was untimely served and because the ruling is sufficient and binding, and draws its essence from the Agreement.   WDPR is entitled to summary judgment in its favor.

### A.    STANDARD OF REVIEW

A party opposing summary judgment bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).   Rule 56 mandates the entry of summary judgment against a plaintiff "who fails to make a showing sufficient to" establish the existence of an element essential to his case. *Earley v. Champion Int'l. Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990).   In such circumstances, "there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial."   *Id.*   (quoting *Celotex*, 477 U.S. at 322-23).   "If the evidence is merely colorable,

or is not significantly probative, summary judgment may be granted." *Id.* (quoting *Anderson*, 477 U.S. at 249-50). When confronted with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G. M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997).

### B.   FEDERAL LAW IS TO BE APPLIED TO THIS ACTION

Local 737 filed claims under three separate statutes in an attempt to vacate the arbitration award that denied its Grievance: Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. 185 ("Section 301"); the Federal Arbitration Act ("FAA"); and the Revised Florida Arbitration Code ("RFAC").[2] (D.E. 1-3 at pp. 7-8.) This Court should analyze this action to vacate an arbitration award under federal law, either Section 301 or the FAA, although Section 301 appears to be the more applicable. "Section 301 of the LMRA governs suits to enforce or vacate an arbitration award arising out of a collective bargaining agreement." *United Steel v. Wise Alloys, LLC*, 642 F.3d 1344, 1352 (11th Cir. 2011) (citing *Bakery, Confectionery & Tobacco Workers Local Union No. 362-T v. Brown & Williamson Tobacco Corp.*, 971 F.2d 652, 654 (11th Cir. 1992)); "The Supreme Court has recognized that the Labor Management Relations Act of 1947 (LMRA) provides an independent basis for federal jurisdiction over labor arbitration awards arising out of collective bargaining agreements, and that the LMRA empowers federal courts to fashion a body of federal common law standards for confirming and vacating labor arbitration awards." *Wiregrass Metal Trades Council AFL-CIO v. Shaw Envt'l. & Infrastructure, Inc.*, 837 F.3d 1083, 1087 n.1 (11th Cir. 2016). As the

---

[2] An amendment in 2013 substituted the title, "Revised Florida Arbitration Code" for "Florida Arbitration Code." §682.01, Fla. Stat; *see* 2013 Fla. Laws Ch. 232, 2013 Fla. SB 530.

Complaint states, the arbitration award that Local 737 seeks to vacate arose out of the collective bargaining agreement between Local 737 and WDPR.  (D.E. 1-3 at pp. 5-7.)  The Court in *Wiregrass* noted that the Eleventh Circuit in *Wise Alloys* also stated, "the FAA does not apply to collective bargaining agreements" but *Wiregrass* described that statement as dicta. *Wiregrass*, 837 F.3d at 1087 n.1.  However, regardless of whether Section 301 or the FAA is applied, the Complaint is time-barred.  Further, under either Section 301 or the FAA, vacatur of the ruling is not warranted.

Although pled in the Complaint, the RFAC does not apply to this action. The RFAC does not apply because this action arises from and depends upon the meaning of a collective bargaining agreement and thus is preempted by Section 301.

> If the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law (which might lead to inconsistent results since there could be as many state-law principles as there are States) is pre-empted and federal labor-law principles—necessarily uniform throughout the Nation—must be employed to resolve the dispute.

*Bartholomew v. AGL Res., Inc.*, 361 F.3d 1333, 1338 (11th Cir. 2004) (quoting *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 405–06 (1988)); *Wise Alloys*, 642 F. 3d at 1349–50 (same).  Thus, because the RFAC does not apply to this action, WDPR is entitled to summary judgment in its favor with respect to the claim brought under the RFAC in Count II of the Complaint.

## C.    LOCAL 737'S COMPLAINT IS TIME-BARRED

WDPR is entitled to summary judgment because Local 737's Complaint is time-barred.[3]  The Eleventh Circuit instructs that to determine the statute of limitations applicable

---

[3] WDPR pled the affirmative defense that Local 737's Complaint was time-barred.  (D.E. 5 at p. 5.)

to a request to vacate an arbitrator's award under Section 301, the Court is to look to Section 12 of the FAA. *Wise Alloys*, 642 F. 3d at 1353–54; *see also United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus., & Serv. Workers Int'l Union AFL-CIO-CLC v. Smurfit-Stone Container Corp.*, 479 F. App'x 250, 253 (11th Cir. 2012) (same).  Thus, regardless of whether Section 301 or the FAA applies, the statute of limitations is the same.  Section 12 of the FAA provides: "Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C. §12.  *See Nu-Best Franchising, Inc. v. Motion Dynamics, Inc.*, No. 8:05-CV-507-T-27TGW, 2006 U.S. Dist. LEXIS 30332, at *12 (M.D. Fla. May 17, 2006) (holding the Interim Award constituted a final arbitration award, subject to the three-month statutory time limit for serving notice of motion to vacate).

Local 737, in its Response in Opposition to Defendant's Motion for Judgment on the Pleadings ("Response to Motion for Judgment on the Pleadings"), argues that "[b]oth the Revised Florida Arbitration Code and the Federal Arbitration Act prescribe a 90-day statute of limitations to file an action to vacate an arbitration award." (D.E. 18 at p.6.)  This is incorrect.[4] The FAA prescribes a statute of limitations of "within three months" to serve the motion to vacate from the date the award is filed or delivered.  9 U.S.C. §12.  As addressed above in Section IV.B., the RFAC does not apply because it is pre-empted by federal law.

---

[4] In its Response to Motion for Judgment on the Pleadings, Local 737 also asserts that the Eleventh Circuit in *Wiregrass* has "withdrawn from [the] proposition" in *Wise Alloys* that a three-month statute of limitations applies to motions to vacate arbitration awards and that *Wiregrass* described *Wise Alloys'* holding applying the FAA statute of limitations as "dicta." (D.E. 18 at p. 6.)  This is an incorrect statement of the law.  *Wiregrass* observed that *Wise Alloys'* statement that "the FAA does not apply to collective bargaining agreements" was dicta. *Wiregrass*, 837 F. 3d at 197 n.1.  *Wiregrass* does not address the issue of a statute of limitations.

The Arbitrator's ruling was issued on October 9, 2017.  (D.E. 1-3 at p. 179.)  The Complaint was filed on Monday, January 8, 2018, which was 91 days later.  However, as Local 737 indicated in Plaintiff's Response to Defendant's First Set of Interrogatories, **service** of the Complaint seeking to vacate the award was not effected until May 8, 2018, nearly **seven** months after the delivery of the award.  (Exs. A and B; D.E. 1-2.)  Thus, because Local 737 served WDPR with its Complaint seeking vacatur more than three months after the ruling was issued, the Complaint is barred by the statute of limitations, and WDPR is entitled to a summary judgment in its favor.  *See* 9 U.S.C. §12; *Wise Alloys*, 642 F. 3d at 1353–54; *Nu-Best Franchising, Inc*., 2006 U.S. Dist. LEXIS 30332, at *12.

### D.      THE RULING SHOULD NOT BE VACATED

Even if the Complaint was timely filed (which it is not), Local 737 cannot meet its burden of asserting sufficient grounds to vacate the arbitration award.  *See Aldred v. Avis Rent-A-Car*, 247 F. App'x 167, 169 (11th Cir. 20007) ("The party challenging the arbitration award bears the burden of 'asserting sufficient grounds to vacate the award.'") (quoting *Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217, 1223 (11th Cir. 2000).  The Union's Complaint is based on its claims that the ruling issued by the Arbitrator on October 9, 2017, was "neither contemplated nor authorized by the Agreement," it did "not draw [its] essence from the Agreement," and the Arbitrator did not issue a further "formal" decision.  (D.E. 1-3 at p. 7, ¶¶22-23.)  However, to the contrary, the Arbitrator's ruling is authorized by the Agreement, it draws its essence from the Agreement, and it is sufficient and binding.    Thus, Local 737 cannot meet its burden of asserting sufficient grounds to vacate the award.

### 1.   Judicial Review Of The Arbitration Decision Is Very Limited.

Any analysis of whether an arbitration decision should be vacated must be viewed through a very restrictive lens.  "[T]he Eleventh Circuit has stated that 'judicial review of arbitration decisions is among the narrowest known to the law.'"  *Veolia Transp. Servs. v. United Transp. Union*, No. 1:13-cv-24125-GAYLES/Turnoff, 2016 U.S. Dist. LEXIS 133447, *12–13, (S.D. Fla. Sept. 28, 2016) (quoting *AIG Baker Sterling Heights, LLC v. Am. Multi-Cinema, Inc.*, 508 F.3d 995, 1001 (11th Cir. 2007) (citation and internal quotation marks omitted)); *see also IBEW, Local 824 v. Verizon Florida, LLC*, 8:13-cv-2987-T-27TGW, 2015 U.S. Dist. LEXIS 1935, at *12 (M.D. Fla. Jan. 8, 2015) (holding the standard of review for vacating an arbitration award is "highly deferential" (citing *Wise Alloys*).  With respect to decisions arising from collective bargaining agreements, "[j]udicial review of an arbitration decision pertaining to a collective bargaining agreement is extremely limited, such that courts cannot overturn an arbitrator's decision so long as the arbitrator is arguably applying the contract." *JAX Transit Mgmt. Corp. v. Amalgamated Transit Union Local Div. No. 1197*, No. 3:13-cv-120-J-32TEM, 2013 U.S. Dist. LEXIS 114050, at *3 (M.D. Fla. Aug. 13, 2013) (citing *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001)).

### 2.   Section 301 Precludes Vacatur.

The Eleventh Circuit identifies the extremely limited bases for vacating an arbitration award that arises from a collective bargaining agreement.  "When faced with a motion to vacate under § 301, '[a] court may not vacate an arbitral award unless it is irrational, exceeds the scope of the arbitrator's authority, or fails to draw its essence from the collective bargaining agreement.'" *Wise Alloys,* 642 F.3d at 1352–53 (quoting *IMC-Agrico Co. v. Int'l Chem.*

*Workers Council of the United Food & Commercial Workers Union*, 171 F.3d 1322, 1325 (11th Cir. 1999) (internal quotation marks and citation omitted)). "Under this standard, 'as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.'" *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. Wise Alloys, LLC*, 807 F.3d 1258, 1272 (11th Cir. 2015) (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987)).

In its Response to Motion for Judgment on the Pleadings, Local 737 argued that its allegation that the "Arbitrator has not issued a decision that meets the standard of the collective bargaining agreement" is a "fact" that "must be taken as true" requiring denial of that motion. (D.E. 18 at p. 3.)  However, regardless of whether Local 737 deems this allegation to be a "fact" (which it is not; it is merely an argument), the applicable language in the Agreement[5] and what the Arbitrator wrote as her decision are not in dispute.  Thus, the Court need only apply the Arbitrator's decision to the analysis required by the applicable law.

Local 737 did not claim that the Arbitrator's ruling was irrational.  WDPR will establish that the undisputed facts demonstrate that the Arbitrator's ruling did not exceed her authority and drew its essence from the Agreement.   WDPR also will establish that Local 737's remaining argument, that the Arbitrator did not submit a "formal" decision—which is not one of the three bases the Eleventh Circuit recognizes to permit vacatur of an arbitration decision—is not a reason to vacate the Arbitrator's ruling.

---

[5] The only reference in the Agreement to an arbitrator's decision states, "The Decision of the Arbitrator shall be final and binding on all parties with no further appeal, except for reasons of setting aside an Arbitrator's Award, as set forth in applicable Federal and Florida Statutes."  (D.E. 1-3 at p. 46; Art. 19, § 3 Grievance Procedure, Step 4.)

### a.      The Arbitrator's Ruling Did Not Exceed Her Authority.

The Arbitrator's ruling did not exceed her authority.  "While a federal court may vacate an arbitration award when it 'exceeds the scope of the arbitrator's authority,' few awards are vacated because the scope of the arbitrator's authority is so broad."  *Wiregrass*, 837 F.3d at 1087 (internal citations omitted).[6]  Thus, even if the Union's allegation that the ruling was "neither contemplated nor authorized by the Agreement," (D.E. 1-3 at p. 7, ¶22), is interpreted as claiming that the Arbitrator's ruling exceeded the scope of the Arbitrator's authority, the Union's argument fails.

The Eleventh Circuit instructs that, in determining whether the Arbitrator exceeded her broad authority, the Court is bound by two principles.  *Id.* The first is that the Court must defer entirely to the Arbitrator's interpretation of the underlying contract no matter how wrong the Court perceives that interpretation may be.  *Id.*  If the Court determines that "'the arbitrator (even arguably) interpreted the parties' contract,' [a court] 'must end [its] inquiry and deny . . . a motion for vacatur.'"  *Id.* at 1088 (quoting *S. Commc'ns Servs., Inc. v. Thomas*, 720 F.3d 1352, 1359 (11th Cir. 2013)).  The second is that an arbitrator may not "'issue[] an award that contradicts the express language of the agreement.'"  *Id.* (quoting *IMC-Agrico Co.*, 171 F.3d at 1325).  "The arbitrator acts within her authority when she even arguably interprets a contract, and she exceeds her authority when she modifies the contract's clear and unambiguous terms." *Wiregrass*, 837 F. 3d at 1088.

---

[6] The court in *Wiregrass* analyzed the case under the LMRA, but recognized that it could look to the FAA for guidance when dealing with labor arbitration cases.  *Id.* at 1087 n.1.

A brief review of the arbitration proceeding, which concerned the gratuity received by servers at a particular restaurant, and the Arbitrator's subsequent ruling, establishes that the Arbitrator did not exceed the scope of her authority.  The issue for the Arbitrator, as framed by the Union was, "Whether the Company violated the Agreement by reducing the gratable[7] portion of the TTP [Total Ticket Price] and, if so, what shall the remedy be?"  (D.E. 1-3 at p. 135.)  Servers at Cinderella's Royal Table, a Character Dining restaurant, receive an automatic 18% gratuity on the TTP for parties of six or more.  (*Id.* at pp. 77-78, 149-150).  However, under the Agreement, the TTP only includes food, beverage, and merchandise that the Server is required to handle and deliver to the guest (*i.e.*, swords, wands, wishing stars), and it expressly excludes "miscellaneous pricing."  (*Id.*)  Included among "miscellaneous pricing," and thus expressly excluded from the TTP, is "imaging."  (*Id.*)

Previously, guests arriving for dinner posed for a photograph with the character Cinderella, the Company developed the photograph and placed it in a folder, and the server handed it to the guests during dinner.  (*Id.* at p. 134 n.2.)  The value of this imaging process was expressly excluded from the TTP.  (*Id.* at p. 134.)  In 2015, the process changed somewhat so that the server no longer delivered a photograph to the guest; instead, the guest could go online and purchase a digital photograph.  (*Id.*)  The Union argued that continuing to exclude the imaging charge from the TTP breached the Agreement because, although the guests still can meet and pose with Cinderella when they arrive, the guests no longer receive a hard-copy photograph at dinner.  (*Id.* at pp. 134-135.)

---

[7] "'Gratable' is a term the Union used describing what portion of the TTP [Total Ticket Price] is subject to a gratuity." (D.E. 1-3 at p. 133.)

The Company's witness testified that guest preferences have changed, and guests now prefer to own digital copies and copyrights to the images for ease of use for holiday cards and social media.  (*Id.* at p. 169.)  The Company argued that the contract language gave the Company wide discretion and latitude to allocate the amount for imaging to any other miscellaneous pricing item, which would continue to be contractually excluded from the calculation of server gratuities.  (*Id.*)  In sum, the Company argued that the Union had failed to meet its burden of proof that the Company had breached the Agreement, and the Union presented no evidence that the Agreement language should be interpreted other than in the manner the Company had interpreted it for years.  (*Id.* at p. 172.)

Following the arbitration hearing and submission of post-arbitration briefs, the Arbitrator issued the following written ruling:

> [T]he Union did not carry its burden of proof, and thus, the Grievance is denied. Per Jt. Ex. 1 (the CBA), p. 2[], the Employer's Article 5, Section 1. "*Management Rights*" includes in relevant portion the rights
>
>> to discontinue conduct of its business or operations in whole or in part; to institute technological changes, including but not limited to, work automation processes and otherwise to take such measures Management may determine to be necessary to the orderly, sufficient, and economical operation of the business.

(*Id.* at p. 179.)

The Arbitrator's ruling is directly and expressly based on her interpretation of the Agreement.  There is nothing in that ruling that indicates in any manner that the Arbitrator modified or contradicted the language of the contract.  *See Wiregrass*, 837 F.3d at 1088.  Thus, the Arbitrator's ruling did not exceed the scope of her authority.  Accordingly, to the extent that Local 737's claim that the Arbitrator's ruling should be vacated is based on the argument

that it exceeded the scope of her authority, WDPR is entitled to a summary judgment in its favor.

### b. The Arbitrator's Ruling Draws Its Essence from the Agreement.

Local 737's argument that the Arbitrator's ruling did not draw its essence from the Agreement also fails.  (*See* D.E. 1-3 at p. 7, ¶23.)  "As long as the arbitrator's award draws its essence from the collective bargaining agreement, and is not merely his own brand of industrial justice, the award is legitimate." *Misco*, 484 U.S. at 36 (citation and internal quotation marks omitted).  An award can be said to fail to draw its essence from an agreement when it contradicts the express terms of that agreement.  *JAX Transit Mgmt. Corp.*, 2013 U.S. Dist. LEXIS 114050, at *5–6 (citing *IMC-Agrico Co.*, 171 F.3d at 1325).  Even then, the award can only be vacated where "'the arbitrator recognized a clear rule of law and deliberately ignored it.'"  *Id.* at *6 (quoting *Aldred*, 247 F. App'x at 170).  In this case, the Arbitrator did draw the essence of her ruling from the Agreement.

The Union argued that the Company had breached the Agreement when the Company did not change the value of "imaging," which is expressly excluded from the TTP, when it changed the process from the guest receiving a hard-copy photograph in a folder to the guest purchasing a digital copy of the photograph online with its attendant digital-use benefits.  (D.E. 1-3 at pp. 134-135.)  The Arbitrator ruled that the Union had not met its burden of proof required for its contract interpretation claim and that the Company's actions were authorized under Article 5 of the Agreement.  (*Id.* at p. 179.)

Regardless of whether the Arbitrator interpreted the Agreement correctly or not (and she did), there is nothing that indicates her ruling contradicted terms of the Agreement,

deliberately ignored a clear rule of law, or imposed the Arbitrator's "own brand of industrial justice," rather than drawing its essence from the Agreement.  Indeed, the Arbitrator's reliance on and citation to a specific provision of the Agreement establishes that her ruling did draw its essence from the Agreement.  Accordingly, to the extent that Local 737's claim that the Arbitrator's ruling should be vacated is based on the argument that it did not draw its essence from the Agreement, WDPR is entitled to a summary judgment in its favor.

**c.      No "Formal" Decision Was Necessary.**

As established above, Local 737 cannot demonstrate that it meets any of the three limited grounds the Eleventh Circuit authorizes to vacate an arbitration award under Section 301.  Therefore, it attempts a fourth: it is left to argue that the ruling should be vacated because the Arbitrator indicated she would provide a "formal" decision, but did not.[8]  Of course, if Local 737 simply thought more was required from the Arbitrator, it would ask the Court for such a "formal" order.  Tellingly, the remedy Local 737 seeks is to vacate the unfavorable ruling and "remand[] to a new arbitrator," hoping that will lead to a different result.  (D.E. 1-3 at p. 7.)  In any event, nothing more than what she already did is required from the Arbitrator for her ruling to be final and binding.

In her ruling, the Arbitrator denied the Grievance because Local 737 failed to meet its burden of proof.  The Arbitrator specifically cited to the "Management Rights" provision of the Agreement, which stipulates that Management may take such measures as it may determine

---

[8] Neither the Rules for the Federal Mediation and Conciliation Service (which, pursuant to the Agreement, govern the selection of the arbitrator and conduct of the arbitration hearing), nor the Agreement itself, require a "formal" decision.  (*See* 29 C.F.R. Part 1404; D.E. 1-3, at p. 46 (Art. 19, § 3 Grievance Procedure, Step 4).)

necessary to the orderly, sufficient, and economical operation of the business.  Nothing more was required to make this decision final and binding.

"In assessing whether an arbitration award is sufficiently final, courts typically examine the arbitrator's intent and whether significant issues were left outstanding." *IBEW, Local 824*, 2015 U.S. Dist. LEXIS 1935, *14.  "Thus, the question here is whether the initial award was a 'final' one[] or merely a 'draft' open for reconsideration." *Local P-9, United Food & Commercial Workers International Union v. George A. Hormel & Co.*, 776 F.2d 1393, 1394 (8th Cir. 1985) (citation omitted) (analyzing whether arbitrator intended award to be "final" as distinguished from a "draft" open for reconsideration, and finding award was merely a "draft" because arbitrator's affidavit attested that it was subject to further taking of evidence if it were found to be in error by either party) (citing *United Steelworkers of America v. Ideal Cement Co.*, 762 F.2d 837, 842 (10th Cir. 1985)).

Here, although the Arbitrator intended to issue a "formal" decision, there was no indication whatsoever that there were any issues, much less significant ones, left outstanding or further evidence to receive and consider.  All that an additional "formal" decision could have provided was a more detailed rationale for the Arbitrator's ruling.  "It is well settled that arbitrators are not required to explain an arbitration award and that their silence cannot be used to infer a grounds for vacating an award." *Robbins v Day*, 954 F.2d 679, 684 (11th Cir. 1992). "Arbitrators have no obligation to the court to give their reasons for an award." *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 598 (1960).

The obvious explanation of the Arbitrator's intent behind a "formal" decision, is that she planned to issue a more detailed labor arbitration decision in which the union's and the

company's cases are addressed, followed by the arbitrator's analysis and rationale for the decision. The Arbitrator's decision holding only that the Union failed to meet its burden and ruling in favor of the Company, citing a provision of the Agreement as her authority, does not make that decision any less final and binding. Accordingly, to the extent that Local 737's claim that the Arbitrator's ruling should be vacated is based on the argument that it is not sufficiently final, WDPR is entitled to a summary judgment in its favor.

### 3. The FAA Precludes Vacatur.

The FAA requires the same result as Section 301. Section 10(a) of the FAA provides four grounds for vacatur, only one of which is referenced by Local 737.[9] Local 737 claims that by failing to issue a later, "formal" decision, the Arbitrator "'so imperfectly execute[d her powers such] that a mutual, final and definite award upon the subject matter was not made.'" (D.E. 1-2 at p. 7, ¶26.) Case law under Section 10(a)(4) establishes, however, that the Arbitrator's ruling was a sufficient, mutual, final, and definite award.

The Supreme Court held, in the context of vacating an arbitration award under Section 10(a)(4), that "[i]t is only when [an] arbitrator strays from interpretation and application of the agreement and effectively dispense[s] his own brand of industrial justice that his decision may be unenforceable.'" *White Springs Agric. Chems., Inc. v. Glawson Invs. Corp.*, 660 F.3d 1277, 1281 (11th Cir. 2011) (quotation marks and citation omitted) (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010)). "So long as the arbitrator was 'arguably

---

[9] *See* 9 U.S.C. §10(a)(4) ("(a) [T]he United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration . . . (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.").

construing' the contract . . . a court may not correct his mistakes under § 10(a)(4)." *Southern Mills, Inc. v. Nunes*, 746 F.3d 1223, 1225 (11th Cir. 2014); *see Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 573 (2013) ("[The arbitrator's decision] went against Oxford, maybe mistakenly so. But still, Oxford does not get to rerun the matter in a court. Under §10(a)(4), the question for a judge is not whether the arbitrator construed the parties' contract correctly, but whether he construed it at all. Because he did, and therefore did not 'exceed his powers,' we cannot give Oxford the relief it wants."). Here, as explained in the Section 301 analysis above, the Arbitrator did not stray from interpretation and application of the Agreement and dispense her own brand of industrial justice. She simply did not flesh out her rationale.[10]

The fact that the Arbitrator indicated that she would follow her ruling with a "formal" decision does not permit Local 737 to fit through the small window provided by Section 10(a)(4). Absent a request for a specific form of award in the agreement, the "arbitrator need not explain her decision" and instead need provide only a "standard award" that simply announces the result. *Cat Charter, LLC v. Schurtenberger*, 646 F.3d 836, 844 (11th Cir. 2011). The court in *Cat Charter* denied vacatur under Section 10(a)(4), finding that the arbitration panel met the agreement's requirement that the panel provide a "reasoned" decision:

> The statement that "[o]n the claim of the Claimants . . . for breach of contract . . . we find that Claimant . . . has proven its claim against MTI by the greater weight of the evidence" is easily understood to mean that, in the swearing match between the Plaintiffs and the Defendants, the Panel found the Plaintiffs' witnesses to be more credible. We certainly cannot say that this statement is devoid of any statements offered as a justification; the reason for the Plaintiffs' victory is plainly provided.

---

[10] Local 737's Response to Defendant's Motion for Judgment on the Pleadings notes that an evidentiary proceeding is sometimes required when reviewing arbitration awards but cites only to cases in which bias, prejudice, or misconduct of the arbitrator was at issue. (D.E. 18 at p. 3.) There are no such allegations here and no evidentiary proceeding is necessary; no relevant facts are in dispute.

*Id.* at 844–45. "Generally, an arbitrator need not explain her decision; thus, in a typical arbitration where no specific form of award is requested, arbitrators may provide a 'standard award' and simply announce a result." *Id.* at 844. *See also United Steelworkers*, 363 U.S. at 598 ("Arbitrators have no obligation to the court to give their reasons for an award."); *Wiregrass*, 837 F.3d at 1090 ("Arbitrators usually are not required to include explanations, much less detailed ones, and they often do not.").

Further, under Section 12 of the FAA, "'[a]n arbitral award is deemed 'final' provided it evidences the arbitrators' intention to resolve all claims submitted in the demand for arbitration, even though the arbitrators purport to retain jurisdiction in the event the need arises to resolve some subsidiary matter, such as damages or backpay calculations.'" *Cont'l Cas. Co. v. Staffing Concepts, Inc.*, No. 8:09-CV-02036-T-23AEP, 2011 U.S. Dist. LEXIS 153827, at *14 (M.D. Fla. Dec. 20, 2011) (quoting *Fradella v. Petricca*, 183 F.3d 17, 19 (1st Cir.1999)); *Nu-Best Franchising, Inc.*, 2006 U.S. Dist. LEXIS 30332, at *10 (same). In *Nu-Best*, the arbitrator issued a so-called "Interim Award," which determined liability, damages, and entitlement to attorneys' fees and administrative expenses, and reserved jurisdiction only to determine the amount of attorneys' fees and costs. *Nu-Best Franchising, Inc.*, 2006 U.S. Dist. LEXIS 30332 at *10–11. The court held that "a finding that the Interim Award was final [was] consistent with the primary purpose served by the arbitration process, to provide parties with expeditious dispute resolution." *Id.* at *11–12.

Accordingly, under the FAA, Local 737's claim that the Arbitrator's ruling should be vacated based on the argument that the Arbitrator so imperfectly executed her powers that a mutual, final, and definite award upon the subject matter was not made, should be rejected.

WDPR is entitled to a summary judgment in its favor as to Local 737's claim under the FAA in Count II of the Complaint.

### 4.      The Ruling Cannot Be Vacated Under the RFAC

To the extent the RFAC applies (which it does not), the analysis reaches the same result. Local 737 claims that Section 683.13(1)(b)(3) of the RFAC "authorizes vacatur where the arbitrator prejudices the rights of a party," arguing that the ruling issued by the Arbitrator "prejudiced plaintiff's rights." (D.E. 1-3 at pp. 7-8, ¶¶27-28.)  Significantly, Local 737 omitted a material part of that provision, which actually states: "(1) Upon motion of a party to an arbitration proceeding, the court shall vacate an arbitration award if . . . (b) [t]here was . . . (3) **[m]isconduct by an arbitrator** prejudicing the rights of a party to the arbitration proceeding." § 683.13(b)(1)(3) (emphasis added).  Thus, to authorize vacatur under the provision cited by Local 737, misconduct by the arbitrator is required to be the cause of the prejudice to the rights of the party.  *See, e.g.*, *Quesada v. City of Tampa*, 96 So. 3d 924, 926 (Fla. Dist. Ct. App. 2012) (finding arbitrator's independent research constituted misconduct warranting vacatur); *Talel Corp. v. Shimonovitch*, 84 So. 3d 1192, 1194 (Fla. Dist. Ct. App. 2012) (holding misconduct warranting vacatur existed where arbitrator deprived defaulted defendants of a hearing and opportunity to defend against claims for unliquidated damages).

Local 737 alleges no such misconduct; certainly none occurred.  Rather, Local 737 only once again trots out the complaint that the Arbitrator's failure to follow her ruling with a later "formal" decision prejudiced its rights.  (D.E. 1-3 at p. 8, ¶28.)  The plain language of the statute cited by Local 737, as well as the relevant case law, establish that vacatur is not authorized under the instant undisputed facts, even under the FAC, if it even applies (which it

does not).  Accordingly, to the extent that Local 737's claim is based on the argument that the Arbitrator's ruling should be vacated under Section 683.13(1)(b)(3), WDPR is entitled to a summary judgment in its favor under the RFAC in Count II of the Complaint.

## IV.   **CONCLUSION**

For the foregoing reasons, WDPR seeks entry of an order granting it summary judgment, after which WDPR will seek an award of its attorneys' fees.

Dated: December 20, 2018

Respectfully submitted,

By:/s/Aaron L. Zandy
　　　Aaron L. Zandy
　　　Florida Bar No. 0125271
　　　Email:  azandy@fordharrison.com
　　　M. Susan Sacco
　　　Florida Bar No. 341721
　　　Email: ssacco@fordharrison.com
　　　Bret Carson Yaw
　　　Florida Bar No. 0100445
　　　Email:  byaw@fordharrison.com

　　　Ford & Harrison LLP
　　　300 South Orange Avenue, Suite 1300
　　　Orlando, FL  32801
　　　407-418-2300  Telephone
　　　407-418-2327  Facsimile

　　　*Attorneys for Defendant*
　　　*Walt Disney Parks and Resorts U.S., Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 20, 2018, I electronically filed the foregoing with the Clerk of the Court by using CM/ECF system, which will send an electronic notification of filing to all counsel of record.

/s/Aaron L. Zandy
Aaron L. Zandy

WSACTIVELLP:10229169.1